## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERE RAVENSCROFT,<br>        Plaintiff,<br><br>        v.<br><br>WILLIAMS SCOTSMAN, INC.,<br>        Defendant. | No. 3:14-cv-870 (MPS) |

## MEMORANDUM OF DECISION

### I.  Introduction

Plaintiff Jere Ravenscroft ("Mr. Ravenscroft") brings this action against his former employer, defendant Williams Scotsman, Inc. ("Scotsman"), alleging violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and alleging the state common law torts of intentional infliction of emotional distress and negligent infliction of emotional distress.  (ECF No. 26.)  Under Federal Rule of Civil Procedure 12(b)(6), Scotsman moves to dismiss Mr. Ravenscroft's sexually hostile work environment claim, arising under Conn. Gen. Stat. § 46a-60(a)(8) of the CFEPA, and the intentional and negligent infliction of emotional distress claims ("IIED" and "NIED", respectively).  (ECF No. 29.)

As discussed below, I GRANT Scotsman's motion to dismiss in part because I find that: (1) Mr. Ravenscroft's hostile work environment claim is time-barred as the underlying sexual harassment occurred over 180 days prior to his filing an administrative complaint and the continuing violations doctrine does not apply; and (2) Mr. Ravenscroft's IIED claim fails because he has not alleged facts suggesting that Scotsman's conduct was extreme or outrageous. I DENY the motion with respect to Mr. Ravenscroft's NIED claim because I find that he has

sufficiently pled that his discharge was carried out in an inconsiderate, humiliating, or embarrassing manner.

### II.  Factual Allegations and Procedural History

These allegations from Mr. Ravenscroft's amended complaint are accepted as true for purposes of deciding the motion to dismiss.  Mr. Ravenscroft is a gay male who began working as a truck driver at Scotsman in January 1992.  (Am. Compl. ¶¶ 7, 9.)  Over the next decade, he received positive evaluations and worked without incident.  (*Id.* at ¶ 10.)  Around July 2010, Scotsman hired Brandon Cowles ("Mr. Cowles").  (*Id.* at ¶ 11.)  Almost immediately after being hired, Mr. Cowles began calling Mr. Ravenscroft "faggot" and other homosexual slurs regularly, and making "derisory comments" about "the types of sexual acts that gay men engage in."  (*Id.* ¶ 12.)  Mr. Ravenscroft immediately notified his supervisors, Lisa Roosa ("Ms. Roosa") and Marvin Gilbert ("Mr. Gilbert"), who told Mr. Ravenscroft that they could not afford to lose a driver so he would "have to deal with it."  (*Id.* ¶ 13.)  Around September 2010, Mr. Cowles resigned from Scotsman.  (*Id.* ¶ 14.)  In September 2011, Mr. Cowles secured a job with Scotsman's subcontractor.  (*Id.*)  He frequently visited Scotsman's business facility and, so that others could hear, began regularly calling Mr. Ravenscroft a "faggot" and making other offensive statements related to Mr. Ravenscroft's sexual orientation.  (*Id.* ¶¶ 14, 15.)  Mr. Ravenscroft again complained to management, who informed him that they could not tell their subcontractor who to hire.  (*Id.* ¶ 16.)  Mr. Ravenscroft then complained to Scotsman's Vice President of Human Resources, Marti Fuller ("Ms. Fuller"), who stated she would make sure that Mr. Cowles would no longer do any work for Scotsman.  (*Id.* ¶ 17.)

Around July 2012, Mr. Ravenscroft's brother passed away.  (*Id.* ¶ 18.)  Mr. Ravenscroft applied for and was granted a personal leave of absence through November 2012.  (*Id.*)  While

on leave, Mr. Ravenscroft regularly received calls from Ms. Roosa and Mr. Gilbert questioning him about his work status, during which they made a number of derogatory statements about his leave, including suggesting that his doctor's note was false and accusing him of abusing the system.  (*Id*. ¶¶ 19, 20.)  After Mr. Ravenscroft returned from his leave, he wrote an email to Ms. Fuller complaining about Ms. Roosa and Mr. Gilbert's actions.  (*Id*. at 21.)  Mr. Ravenscroft alleges on information and belief that Ms. Roosa and Mr. Gilbert obtained a copy of this email. (*Id*.)

On March 5, 2013, Mr. Ravenscroft was called into a meeting with Ms. Roosa and Scotsman's Regional Vice President, Terry Richardson ("Mr. Richardson").  (*Id*. at 22.)  Ms. Roosa and Mr. Richardson screamed at Mr. Ravenscroft during the meeting, and when Mr. Ravenscroft said he was being targeted for complaining to Human Resources about various issues, Mr. Richardson screamed at him, "Try suing this company and see what happens to you . . . I'm not afraid of you."  (*Id*.)  Mr. Ravenscroft stood and said he needed to step out of the room for a moment.  (*Id*. ¶ 23.)  Mr. Richardson screamed at him, "Good.  Get up, get out, and don't come back."  (*Id*.)  Scotsman terminated Mr. Ravenscroft's employment.  (*Id*.)

Mr. Ravenscroft filed an administrative complaint with the Commission on Human Rights and Opportunities ("CHRO") on August 19, 2013, and received a Release of Jurisdiction letter on May 27, 2014.  (*Id*. ¶ 5.)  He filed the present action on July 16, 2014.  (ECF No. 1.) Scotsman initially moved to dismiss Mr. Ravenscroft's FMLA claims, in addition to the claims at issue in this ruling.  (ECF No. 16.)  I allowed Mr. Ravenscroft to file an amended complaint to address the alleged defects discussed in Scotsman's initial motion to dismiss.  (ECF No. 17.)  In response, Mr. Ravenscroft filed an amended complaint, which includes additional allegations

related to his FMLA claims.  Scotsman has now renewed its motion to dismiss only with respect to the sexually hostile work environment, IIED, and NIED claims.

### III. Legal Standard for a Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal citation and quotation marks omitted).  In evaluating a motion to dismiss the Court accepts as true all of the complaint's factual, non-conclusory allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Finally, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

### IV. Discussion

#### A. Hostile Work Environment

Mr. Ravenscroft alleges that Scotsman subjected him to a sexually hostile work environment, in violation of Conn. Gen. Stat. § 46a-60(a)(8).[1]  Under Conn. Gen. Stat. § 46a-

---

[1] This provision states that it shall be a discriminatory practice:

> (8) For an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex or gender identity or expression. "Sexual harassment" shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting

82(f), such a claim must be filed with the CHRO within 180 days of the discriminatory act at issue.  Because Mr. Ravenscroft filed his CHRO complaint on August 19, 2013, I may consider only discriminatory acts that occurred up to 180 days before that date, i.e., on or after February 20, 2013, when evaluating his hostile work environment claim.  Mr. Ravenscroft concedes that some of the conduct alleged in his amended complaint occurred more than 180 days before he filed his CHRO complaint (*see* Obj., at 4), but argues that other discriminatory acts occurred within the 180-day window and further, that I may consider all of the alleged conduct under the "continuing violation doctrine."[2]

"The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations."  *Annis v. Cnty. of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (quotation marks omitted).  "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004).  "[A] series of separate acts that collectively constitute one 'unlawful employment practice'" can qualify as a continuing violation.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).  "A continuing violation may be found 'where there is proof of specific ongoing

---

  such individual, or (C) such conduct has the purpose or effect of substantially
  interfering with an individual's work performance or creating an intimidating,
  hostile or offensive working environment[.]

Conn. Gen. Stat. § 46a-60(a)(8).

[2] "[C]laims, including hostile work environment claims, 'under CFEPA are analyzed in the same manner as those under Title VII.'"  *McKenna v. VCS Grp. LLC*, 3:08-cv-1583, 2009 WL 3193879, at *6 (D. Conn. Sept. 30, 2009) (quoting reference omitted); *see also Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 189 (D. Conn. 2000) (analyzing the continuing violation exception in sexually hostile work environment claim under Title VII and Conn. Gen. Stat. § 46a-60(a)(8) together "[b]ecause federal law on [sexual harassment under Title VII] is applicable to CFEPA").

discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 189-90 (D. Conn. 2000) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).   "[C]ourts in this circuit disfavor application of the continuing violations doctrine and hold that only compelling circumstances warrant use of this exception to the statute of limitations."   *Id*. at 190 (collecting cases).   "A continuing violation . . . may not be based on the continuing effects of an earlier discrimination or on a completed act of discrimination.'"   *Id*. (citing references omitted).   Unlike hostile work environment claims, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."   *Morgan*, 536 U.S. at 113-14 (listing termination, failure to promote, denial of transfer, and refusal to hire as examples of discrete acts).

Although Mr. Ravenscroft characterizes all of the allegations in his amended complaint as a series of sexual harassment allegations that thereby satisfy the continuing violation exception, he fails to plead any specific acts of sexual harassment that occurred after Ms. Fuller informed him that Mr. Cowles would "no longer do any work" for Scotsman.   (Am. Compl. ¶ 17.)   While the exact date of this interaction is not specified, the amended complaint places it some time between September 2011—when Mr. Cowles was hired by Scotsman's subcontractor—and July 2012, when Mr. Ravenscroft's brother passed away and he took a personal leave of absence.   (*Id*. ¶¶ 14-18.)   There are no allegations of sexual harassment after this time.   In other words, the final alleged act of sexual harassment occurred well over a year before he filed his complaint with the CHRO in August 2013.

Although he alleges other wrongdoing occurring after July 2012, none of that wrongdoing is alleged to be related to sexual harassment.  The only comments he attributes to Scotsman's supervisors after he spoke to Ms. Fuller were unrelated to sexual harassment.  (*See, e.g.*, Am. Compl. ¶ 20 (alleging that "management made a number of derogatory statements about the plaintiff's use of a leave of absence, including, *inter alia*, suggesting that the plaintiff's doctor's note was false and accusing plaintiff of abusing the system.").)  Nor does he allege any facts suggesting that his termination—which does fall within the 180-day window—was in furtherance of an ongoing practice or policy of discrimination related to the earlier acts of sexual harassment by Mr. Cowles.  To the contrary, the amended complaint suggests that his conversation with Ms. Fuller about Mr. Cowles—which was followed by his own months-long leave of absence—constituted a clean break in any "ongoing practice" of sexual harassment (*see* Am. Compl. ¶¶ 17-21), and there is no allegation of any resumption of any such practice upon his return to work or in the months preceding his discharge.  Thus, because Mr. Ravenscroft has not alleged even a single incident of sexual harassment that occurred 180 days before he filed his CHRO complaint, he cannot use the continuing violation exception to bring his sexual harassment claim.  *See Miner*, 126 F. Supp. 2d at 192 (dismissing plaintiff's time-barred sexual harassment claim after holding that the continuing violation exception did not apply because "[t]hat [plaintiff] has alleged several specific acts of retaliation within the limitations period is unavailing with respect to her claims of sexual harassment.  A plaintiff cannot resurrect claims of discrimination that are outside the limitations period through subsequent acts of retaliation within the limitations period.").

To the extent Mr. Ravenscroft argues the continuing violation exception applies to his sexually hostile work environment claims because Scotsman's failure to address those claims

constituted an ongoing practice, this argument likewise fails. Although he argues that Scotsman's supervisors "deliberately ignor[ed]" his complaints, Mr. Ravenscroft has not alleged that this continued for so long as to amount to a discriminatory policy or practice, or that Scotsman systematically ignored allegations of sexual harassment from other employees. Instead, he alleges that his complaints *were* addressed:  Ms. Fuller told him that Mr. Cowles "would no longer do any work" for Scotsman after he complained to her.  There are no allegations that Mr. Cowles continued to work for Scotsman or at its premises after Mr. Ravenscroft spoke to Ms. Fuller, let alone that Mr. Cowles continued to make derogatory comments about Mr. Ravenscroft.  Without such allegations, Mr. Ravenscroft cannot argue that his employer engaged in an ongoing discriminatory practice by leaving his complaints unremedied. *See Miner*, 126 F. Supp. 2d at 192 (dismissing plaintiff's similar argument where employer took action in response to complaints).  The continuing violation exception therefore does not apply and Mr. Ravenscroft's sexually hostile work environment claim is dismissed as time-barred.

### B. Intentional Infliction of Emotional Distress

Next, Scotsman argues that Mr. Ravenscroft's IIED claim should be dismissed because he does not allege "extreme or outrageous" conduct.  I agree.

An IIED claim requires four elements:  "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; 2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526-27 (2012) (internal quotation marks omitted).  "Whether a defendant's conduct is sufficient to satisfy the

requirement that it be extreme and outrageous is initially a question for the court to determine."
*Id*. at 527.  "Only where reasonable minds disagree does it become an issue for the jury."  *Id*.

"Liability for intentional infliction of emotional distress requires conduct that exceeds all
bounds usually tolerated by decent society [and] has been found only where the conduct has been
so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
Generally, the case is one in which the recitation of the facts to an average member of the
community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!
. . . Conduct on the part of the defendant that is merely insulting or displays bad manners or
results in hurt feelings is insufficient to form the basis for an action based upon intentional
infliction of emotional distress."  *Id*.

Mr. Ravenscroft argues that he has stated a claim for IIED because he "was subjected to
pervasive comments about his sexual orientation and comments [by Mr. Cowles] about the type
of sex acts he engaged in," to which his supervisors were indifferent.  (Obj., at 11.)  But "a
company is not liable for the intentional torts of its employees that are engaged in outside the
scope of their employment."  *Marini v. Costco Wholesale Corp.*, 3:11-cv-331, 2014 WL
6772297, at *10 (D. Conn. Dec. 1, 2014).  "To evaluate the degree to which an employee was
acting within the scope of his employment, 'courts look to whether the employee's conduct: (1)
occurs primarily within the employer's authorized time and space limits; (2) is of the type that
the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve
the employer.'"  *Id*. (quoting *Nathans v. Offerman*, 922 F. Supp. 2d 271, 275 (D. Conn. 2013)).
Although Mr. Ravenscroft alleges that Mr. Cowles made his derogatory comments at work, he
does not allege that Mr. Cowles's conduct was "of the type [he was] employed to perform," or

that his conduct was motivated, in any part, to serve Scotsman.  Thus, based on the allegations, Scotsman is not vicariously liable for Mr. Cowles's conduct.

Further, with respect to his supervisors, Mr. Ravenscroft claims only that they were indifferent to his complaints of harassment by Mr. Cowles.  As discussed above, however, Mr. Ravenscroft alleges that Ms. Fuller *did* take action in response to his complaints, and in any event, "courts in this circuit have held that employers['] 'failure to respond or to prevent, or choos[ing] to ignore, [harassing conduct by another employee] does not rise to the level of extreme and outrageous behavior nor does it constitute a basis for vicarious liability for the acts of another.'"  *Miller v. Edward Jones & Co.*, 355 F. Supp. 2d 629, 647 (D. Conn. 2005) (quoting references omitted) (collecting cases); *see also Sangan v. Yale Univ.*, No. 3:06-cv-587, 2006 WL 2682240, at *8 (D. Conn. Sept. 15, 2006) ("One of Plaintiff's principal claims against Yale is its failure to assist her or deter [its employee] Rajendran after Plaintiff's numerous complaints describing harassing and discriminatory conduct by Rajendran. This Court has held that a failure "to respond" or "to prevent," or "choos[ing] to ignore," such conduct does not rise to the level of extreme or outrageous behavior, nor does it constitute a basis for vicarious liability for the acts of another.").  Nor do Mr. Ravenscroft's remaining allegations—that his supervisors called him during his leave of absence and questioned the basis for his leave, and that he was mistreated and retaliated against during his termination—amount to conduct so extreme as to ground an IIED claim.  Mr. Ravenscroft has therefore failed to state an IIED claim against Scotsman.

   **C.  Negligent Infliction of Emotional Distress**

To prevail on his NIED claim, Mr. Ravenscroft must allege "that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily

harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress." *Olson v. Bristol-Burlington Health Dist.*, 87 Conn. App. 1, 5 (2005) (citing *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446 (2003)). "[N]egligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.'" *Parsons v. United Techs. Corp.*, 243 Conn. 66, 88 (1997) (quoting reference omitted); *see also Copeland v. Home and Cmty. Health Servs., Inc.*, 285 F. Supp. 2d 144, 152 (D. Conn. 2003) (reviewing Connecticut cases to hold that plaintiff bringing a NIED claim need not allege extreme or outrageous conduct, but only that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner"). "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Parsons*, 243 Conn. at 88-89.

Because a NIED claim is limited to an employer's conduct during termination, I analyze this claim based only on Mr. Ravenscroft's allegations of Scotsman's termination of him, not the allegations concerning conduct occurring during his ongoing employment. These termination allegations are that Mr. Ravenscroft met with Ms. Roosa and Mr. Richardson, who screamed at him; that Mr. Ravenscroft expressed his opinion that he was being targeted for complaining to human resources about various issues; that Mr. Richardson screamed at him, "Try suing this company and see what happens to you . . . I'm not afraid of you;" and that as Mr. Ravenscroft stood to leave the room, Mr. Richardson screamed, "Good. Get up, get out, and don't come back." (Am. Compl. ¶¶ 22, 23.) Mr. Ravenscroft alleges that as a result of this conduct he suffered severe emotional distress, including embarrassment, stress, anxiety, frustration, humiliation, and has been limited in his ability to enjoy life's pleasures. (*Id.* ¶ 27.)

Drawing all reasonable inferences in Mr. Ravenscroft's favor, I find that he has sufficiently stated a NIED claim.  Repeatedly screaming at an employee in the manner alleged by Mr. Ravenscroft is unreasonable behavior during the termination process and could be considered "inconsiderate, humiliating or embarrassing."  *Copeland*, 285 F. Supp. 2d at 152. Given Mr. Ravenscroft's low burden at the pleadings stage, I find that he has adequately pled a NIED claim.

                            IT IS SO ORDERED.


                            _____/s/_____
                            Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                March 23, 2015